ASOCIACION de COMPOSITORES Y EDITORES de MUSICA LATINOAMERICANA, Petitioners,

v.

COPYRIGHT ROYALTY TRIBUNAL, Respondent.

American Society of Composers, Authors and Publishers, Broadcast Music, Inc., and SESAC, Inc., Intervenors.

No. 1222, Docket 88–4035.

United States Court of Appeals, Second Circuit.

Argued May 31, 1988.

Decided Aug. 8, 1988.

Lawrence J. Bernard, Jr. (Ward & Mendelsohn, P.C., Washington, D.C., of counsel), for petitioners.

Dwight G. Rabuse, Appellate Staff Atty. (John R. Bolton, Asst. U.S. Atty. Gen., John F. Cordes, Appellate Staff Atty., U.S. Dept. of Justice, Civil Div., Washington, D.C., of counsel), for respondent.

I. Fred Koenigsberg (Bernard Korman, Bennett M. Lincoff, ASCAP, New York City, Robert Cassler, Washington, D.C., Edward W. Chapin, Nicholas Arcomano, Broadcast Music, Inc., New York City, Charles T. Duncan, Michael W. Faber, Joseph J. DiMona, Reid & Priest, Washington, D.C., John Koshel, Laurie Hughes, Steven Gordon, SESAC, Inc., New York City, of counsel), filed a joint brief on behalf of intervenors ASCAP, BMI and SESAC, Inc.

Before FEINBERG, LUMBARD and MINER, Circuit Judges.

MINER, Circuit Judge:

Asociacion de Compositores y Editores de Musica LatinoAmericana ("ACEMLA") petitions this Court for review of a final decision of the United States Copyright Royalty Tribunal (the "CRT" or "Tribunal") awarding ACEMLA one dollar in cable television copyright royalties for the year 1985, *see 1985 Cable Royalty Distribution*, 53 Fed.Reg. 7133 (1988). ACEMLA argues that the CRT acted arbitrarily in evaluating the evidence presented, that the decision is not supported by substantial evidence and that the one dollar award is not within the "zone of reasonableness," *see National Ass'n of Broadcasters v. CRT*, 809 F.2d 172, 175 (2d Cir.1986). For the reasons that follow, we deny the petition.

## BACKGROUND

As part of their service to subscribers, cable television operators often provide television signals that originate outside the local television market, a practice known as "distant signal carriage." Federal copyright laws allow a cable operator to retransmit television signals that contain copy-

righted material without infringing the rights of the copyright owner if the operator makes semi-annual payments to a fund administered by the CRT. *See* 17 U.S.C. § 111(c)(1) & (d)(2)(B) (1982); *NAB v. CRT*, 809 F.2d at 175; *Christian Broadcasting Network, Inc. v. CRT*, 720 F.2d 1295, 1300 (D.C.Cir.1983). The fund is distributed by the CRT "to the copyright owners entitled," 17 U.S.C. at § 111(d)(5)(B) (Supp. IV 1986), on an annual basis, *see id.* at § 111(d)(3) & (d)(4)(B).

The CRT has established a two-stage proceeding for distributing the fund. *See 1978 Cable Royalty Distribution Determination*, 45 Fed.Reg. 63,026, 63,027 (1980). In the first stage, the CRT apportions the fund among various copyright categories, such as the music category, and divides the royalties among the claimants in each category. In the second stage, the Tribunal resolves disputes between claimants in each category concerning entitlement to the royalties the CRT has awarded. *Id.* The instant petition for review arises out of the CRT's resolution of a dispute between competing claimants in the music category. ACEMLA, a publisher of Spanish-language music, claimed the entire amount of that portion of the 1985 cable royalty fund attributable to performances of Spanish-language music, approximately 1.24% of the total amount set aside for the music category. The three major performing rights societies[1]—the American Society of Composers, Authors and Publishers ("ASCAP"), Broadcast Music, Inc. ("BMI") and SESAC, Inc. ("SESAC")—(intervenors in this proceeding) claimed 100% of the Spanish language music royalties as representatives of copyright owners and disputed ACEMLA's right to any portion of the fund.

In support of its claim before the CRT, ACEMLA submitted evidence establishing that Spanish-language titles in its repertoire had been used in programs on Spanish-language television stations WXTV and WNJU. *1985 Royalty Proceeding*, 53 Fed. Reg. at 7138. ACEMLA asserted that, because WXTV was the flagship station for Spanish International Network ("SIN") during 1985, the music performed on WXTV was carried by SIN affiliates around the country and retransmitted by cable television operators who offer SIN affiliates to their subscribers. Similarly, ACEMLA claimed that WNJU was carried by nine cable systems during the first half of 1985 and ten cable systems during the latter half of that year. *Id.* In rebuttal, the intervenors questioned ACEMLA's evidence, asserting that nine performances claimed by ACEMLA were not scheduled for broadcast on the dates ACEMLA had indicated. Intervenors also argued that eight songs ACEMLA identified as its own were, in fact, in the intervenors' catalogues.

In support of their claim to 100% of the Spanish-language music royalties, ASCAP, BMI and SESAC submitted evidence of their extensive involvement in licensing television stations nationwide. *Id.* They also claimed U.S. representation of foreign performing rights societies from several Spanish-speaking countries, among them Argentina, Bolivia, Brazil, Chile, Mexico, Spain and Venezuela. Finally, the intervenors offered evidence that a substantial number of Spanish-language music titles were in their combined repertoires. Much of this evidence was incorporated into the record by reference to evidence presented in earlier CRT proceedings, although some documents and testimony were presented to the Tribunal in support of the intervenors' case. *See id.* The intervenors presented no evidence of actual performances of their Spanish-language music.

The CRT found that ASCAP, BMI and SESAC had established that "[e]very television station in the United States, including Spanish-language stations, holds a license from one, two or three of [the intervenors] so that music can be performed." *Id.* at 7139. The evidence indicated that the intervenors controlled the rights to a substantial amount of Spanish-language

---

1. A performing rights society is "an association or corporation that licenses the public performance of nondramatic musical works on behalf of the copyright owners," 17 U.S.C. § 116(e)(3) (1982).

music, through either their agreements to represent foreign societies in the United States or their own catalogues of copyrighted work. In sharp contrast, ACEMLA failed to license *any* television station or receive licensing income in 1985. *Id.*

The CRT rejected the intervenors' challenges to ACEMLA's evidence, but concluded that, when read in the light most favorable to ACEMLA, the evidence established a claim to 50 performances of 40 songs. *Id.* The CRT found that ACEMLA claimed actual performances of an "insignificant" fraction of the "universe of all performances of music on television during 1985 . . . carried by cable systems on a distant signal basis—hundreds of thousands of hours of performances of songs, theme music and background music," *id.* However, the CRT declined to deny ACEMLA an award, noting that the claimant had "shown a prima facie case, that is, that it had some works performed in 1985 over television broadcast stations which works were retransmitted by cable systems to their subscribers." *Id.* Recognizing that its "task is to make awards to copyright owners who meet the requirements set by Congress," *id.*, the CRT concluded that "a minimal award" was proper, *id.* Thus, based on the relative extent of the competing claimants' involvement in music licensing, the relative size of their Spanish-language music repertoires and the insignificance of ACEMLA's actual claim, the CRT found that ACEMLA was entitled to "the smallest possible award, $1." *Id.* The remainder of the music category fund, including the 1.24% attributable to Spanish-language music, was allocated to the intervenors, based on their dominance of the market, their extensive involvement in music licensing and their substantial catalogues.

## DISCUSSION

ACEMLA bears a substantial burden before this Court. The CRT's decision will not be overturned unless it was arbitrary or capricious or unsupported by substantial evidence, *see NAB v. CRT,* 809 F.2d at 175, or unless the CRT's award is outside the "zone of reasonableness," *id.* We find that ACEMLA has failed to sustain its burden.

ACEMLA's main argument in support of its petition is that its proof of actual performances of copyrighted works should have been accorded decisive weight by the Tribunal. Citing our decision in *ACEMLA v. CRT,* 763 F.2d 101 (2d Cir.1985) ("*ACEMLA I*"), petitioner claims that "both the CRT, in its rules, and this Court have emphasized the importance of 'actual performance' evidence." From this premise, ACEMLA argues for a rule of evidence that would require the Tribunal to favor evidence of "actual performance" over other types of evidence. Because ACEMLA was the only claimant to produce proof of actual Spanish-language music performances on cable television, it claims that the CRT should have awarded it the 1.24% of the music fund that is attributable to Spanish-language music. As a subsidiary argument in support of this claim, ACEMLA asks this Court to draw a "negative inference" from the intervenors' failure to present any actual performance evidence in support of their claim.

ACEMLA also argues that the CRT failed to follow the rule we set down in *ACEMLA I* requiring the Tribunal to apply "the same standards of proof of entitlement . . . to all the competing [claimants]," *id.* at 109. According to the petitioner, the CRT "uncritically accepted all of Intervenors' self-serving evidence concerning the size, variety and quality of their Spanish-language music repertory," while dismissing similar evidence presented by ACEMLA concerning its catalogue. Finally, ACEMLA claims that the CRT analyzed ACEMLA's evidence mathematically, although the evidence presented by the intervenors was not so evaluated.

ACEMLA's claims are meritless. Its proposed preference for "actual performance" evidence would require the CRT to ignore pertinent evidence of cable market composition in making its royalty decisions, an approach that would conflict with Congress' directive that the CRT resolve allocation disputes "on the basis of 'all pertinent data and considerations presented by the

claimants,'" *CBN v. CRT*, 720 F.2d at 1303 (quoting H.R.Rep. No. 1476, 94th Cong., 2d Sess. 97, *reprinted in* 1976 U.S. Code Cong. & Admin. News 5659, 5712).

Additionally, ACEMLA's reliance on evidence of actual performances is misplaced. Recently, we questioned the value of actual performance proof, noting that evidence of cable retransmission, standing alone, was insufficient to support an entitlement claim because of the Tribunal's policy to avoid allocating royalties based solely on the standard copyright fees that would be generated by performances. *See NAB v. CRT*, 809 F.2d at 182. Thus, we believe that ACEMLA's argument attaches a talismanic significance to its actual performance evidence that is unjustified in light of the approach directed by Congress, followed by the CRT and reaffirmed by this Court.

Moreover, we must review a challenge to the Tribunal's evidentiary rulings with some deference, for "the type of proof that will be acceptable and the weight it should receive lie largely in the discretion of the CRT." *ACEMLA I*, 763 F.2d at 109. The Tribunal rejected ACEMLA's recommendation concerning the proper method of weighing its evidence, *see* 53 Fed.Reg. at 7140. That decision is neither arbitrary nor capricious. Furthermore, we reject petitioner's view that the intervenors should have been subject to a "negative inference" for their failure to produce "actual performance" proof. This argument also was presented to the CRT, and we agree with its conclusion that ACEMLA's view would reduce the Tribunal's task to a mechanistic procedure unrelated to market realities, *see id.*

Nothing in *ACEMLA I* compels a contrary conclusion. The *ACEMLA I* court attached no extraordinary significance to proof of actual performance. In fact, the court specifically rejected the notion that offering such proof was a prerequisite to entitlement. *See id.* at 109. We recognized that other types of evidence could support an entitlement claim, observing:

> It may be that in the absence of direct proof of actual … performances *the CRT might have taken "judicial" or* "administrative" *notice that some performances of the copyrighted works of [the intervenors] must have occurred because of the dominant position they hold in the industry.*

*Id.* (emphasis added). The instant case presented the CRT with a situation similar to that alluded to in *ACEMLA I.* Finding that the intervenors had failed to offer proof of specific performances, the CRT made clear its intention to take "administrative" notice of evidence that would support the inference that performances had occurred. *See* 53 Fed.Reg. at 7139. The CRT was directed to that evidence by the intervenors, which also presented additional documentary and testimonial evidence in support of their claims. Therefore, we find the Tribunal's decision to credit the intervenors' claims of entitlement completely consistent with our holding in *ACEMLA I* and reasonable in light of the other evidence presented.

Nor do we agree with ACEMLA that it was held to a higher standard of proof than the intervenors. It does appear that the CRT adopted some evidence without extensive scrutiny. However, its action was appropriate because that evidence was offered by reference to the records of prior proceedings before the Tribunal. These submissions were more than mere allegations of fact; they included actual findings of the Tribunal made after a careful analysis of the evidence presented in those prior proceedings. We find nothing untoward in the Tribunal's acceptance of this evidence as fact. Furthermore, ACEMLA has offered no basis for questioning the validity of the intervenors' statistics: It has produced nothing to suggest that the intervenors' evidence is out-dated or otherwise flawed. We therefore find no basis for disturbing the CRT's determination on this ground.

We also reject ACEMLA's claim that the amount of the award is unreasonable. We have, in the past, noted the importance of recognizing that copyright use has marketplace value, *see NAB v. CRT*, 809 F.2d at 182. ACEMLA claims that the CRT ignored the value of ACEMLA's copyrights in making the nominal award under consideration here. We agree with ACEMLA

**14**

that, since there is evidence of copyright use, the allocation of a nominal award of cable royalties to ACEMLA requires that "we scrutinize carefully, within the limited scope of our review under the APA, the Tribunal's determination," *CBN v. CRT,* 720 F.2d at 1305.

Applying this standard, the CRT's decision should be upheld. The intervenors clearly have established their extensive involvement in television licensing. Their Spanish-language repertoire is substantial, and, as the CRT found, they represent a sizable number of the Spanish-language performing rights societies around the world. By contrast, ACEMLA has yet to produce sufficient evidence of its Spanish-language music licensing and publishing activities to approach the record established by the intervenors. Petitioner remains a relatively insignificant participant in the cable retransmission market. Because the CRT must determine relative shares of the total cable royalty "pie," we find substantial evidence to support the conclusion that the intervenors are entitled to the "lion's share" of the fund. Further, we find that the nominal award to ACEMLA, in view of the evidence it presented, was entirely proper.

In light of the foregoing, we are without power to substitute our judgment for that of the CRT in determining the value of copyright use in this case. "Congress, for better or worse, has entrusted [the CRT] with an unenviable mission of dividing up the booty among copyright holders," *NAB v. CRT,* 772 F.2d 922, 940 (D.C.Cir.1985), *cert. denied sub nom. CBN v. CRT,* 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986). Recognizing that the decision before us is an "inherently subjective judgment call[ ]," *id.,* we defer to the Tribunal's broad discretion in fulfilling Congress's mandate.

The remainder of petitioner's arguments are without merit.

### CONCLUSION

The petition is denied.