**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Andre Lavon TAYLOR, Defendant–Appellant.**

No. 00–10046.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 2000

Filed Feb. 8, 2001

**996**

Michael J. Kennedy, Assistant Federal Public Defender, Las Vegas, Nevada, for the defendant-appellant.

Peter Ko and Thomas M. O'Connell, Assistant United States Attorneys, Las Vegas, Nevada, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, CYNTHIA HOLCOMB HALL, and W. FLETCHER, Circuit Judges.

SCHROEDER, Chief Judge:

Andre L. Taylor appeals his conviction of four counts of transportation of a minor for the purposes of prostitution under 18 U.S.C. § 2423(a), and of two counts of money laundering under 18 U.S.C. §§ 1957 and 1956(a)(1)(A)(i). The main issue that this circuit has not yet addressed is whether conviction under 18 U.S.C. § 2423(a)(transportation of a minor for purposes of prostitution or commission of another sex offense) requires the government to prove that the defendant knew the victim was a minor. We hold that it does not, because the statute is intended to protect young persons who are transported for illicit purposes, and not transporters who remain ignorant of the age of those whom they transport.

The principal evidentiary challenge is to testimony by a government expert on the relationship between prostitutes and their pimps. The testimony was properly admitted. In accordance with the principles of *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the testimony was properly admitted because it reflected specialized knowledge that assisted the jury in evaluating the credibility of the government's principal witness.

Taylor also contends the government failed to offer sufficient evidence to justify convictions of money laundering under either 18 U.S.C. §§ 1957 or 1956(a)(1)(A)(i), and that the government should not have admitted evidence of Taylor's prior bad acts. None of these arguments succeeds.

### Facts

Taylor pursued careers in various aspects of the entertainment and related industries. During 1997 he served as a consultant for the production of a documentary on the subject of pimps. He also endeavored to pursue a career as a rap and hip hop singer, producing and attempting to market a CD entitled "The Big Pimp." Finally, he ran a business he described as an "escort service" that employed women who engaged in illegal prostitution. Most of his activities were conducted in San Francisco and Las Vegas.

One of the women he employed was Meagan Fischmann, whom he met in Las Vegas in May, 1997, when she was 16. He soon purchased an airline ticket for her, and the pair traveled to San Francisco, where she worked as a prostitute. Within a few days she was arrested and returned to her grandmother in Florida. The evidence reflects that Taylor then arranged for her to travel back to Las Vegas, where she again engaged in prostitution. She and Taylor also made at least one round trip to Phoenix to obtain new false identification for Fischmann as "Aston Royce," age 21.

### Transportation of a Minor

Taylor was convicted of transporting a minor for purposes of prostitution, under

18 U.S.C. § 2423(a), arising out of his arranging Fischmann's trips from Florida to Las Vegas, from Las Vegas to San Francisco, and from Las Vegas to Phoenix. Taylor asked the district court to instruct the jury that it must find as an element of each count that Taylor knew Fischmann was under the age of 18. The district court declined, holding that knowledge of minority was not required so long as the government proved that Fischmann was a minor and that Taylor was transporting her for purposes of prostitution.

■ On appeal, Taylor contends that a contrary interpretation is compelled by the wording of the statute. A more natural reading of the statute, however, is that the requirement of knowledge applies to the defendant's conduct of transporting the person rather than to the age of the person transported.

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under. this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2423(a).

Taylor asks us to look at statutes regulating the transportation or sale of hazardous waste that have been interpreted to require knowledge of the nature of the substance being transported or sold. *See U.S. v. Heuer,* 4 F.3d 723 (9th Cir.1993)(finding that an offense under 42 U.S.C. § 6928(d)(2) requires knowledge that the waste being sold is hazardous); *U.S. v. Speach,* 968 F.2d 795 (9th Cir.1992)(holding that an offense under 42 U.S.C. § 6928(d)(1) requires knowledge that the waste being transported is hazardous). Those cases are not helpful, however, because it is the hazardous nature of the substance that makes the conduct criminal. If the substance being transported were not hazardous, there would be no crime.

Here, in contrast, the transportation of any individual for purposes of prostitution or other criminal sexual activity is already unlawful under federal law. 18 U.S.C. § 2421. Under 18 U.S.C. § 2423(a), the fact that the individual being transported is a minor creates a more serious crime in order to provide heightened protection against sexual exploitation of minors. *See, e.g.,* H.R. Rep. 105–557, at 17 (1998) (justifying 1998 amendment increasing penalties for offenses under 18 U.S.C. § 2423(a)). As Congress intended, the age of the victim simply subjects the defendant to a more severe penalty in light of Congress' concern about the sexual exploitation of minors. *Cf. U.S. v. Figueroa,* 165 F.3d 111, 115 (2d Cir.1998)(noting that, if a criminal statute's language is unclear, its scienter requirement is presumed to be met once an individual forms the requisite intent to commit some type of crime). This is the conclusion reached by the courts in other circuits that have considered the same issue. *See U.S. v. Hamilton,* 456 F.2d 171, 173 (3rd Cir.1972)(per curiam); *U.S. v. Griffith,* 2000 WL 1253265 (S.D.N.Y.)(holding that a defendant violated Section 2423(a) when the victim was a minor, even if he lacked knowledge that she was).

■ The district court correctly interpreted the statutory elements of the crime, and its instructions were not in error. Ignorance of the victim's age provides no safe harbor from the penalties in 18 U.S.C. § 2423(a). If someone knowingly transports a person for the purposes of prostitution or another sex offense, the transporter assumes the risk that the victim is a minor, regardless of what the victim says or how the victim appears.

### Expert Testimony on Relationship between Pimps and Prostitutes

■ During the presentation of its case-in-chief, the government sought to intro-

duce the testimony of an academic expert (Dr. Lee) on the relationship between prostitutes and their pimps. Taylor contends that the district court failed to apply the required procedural safeguards for admission of expert testimony, and that such testimony was not relevant in any case. Neither of these contentions is persuasive.

The government wanted to include Dr. Lee's testimony primarily to shed light on Fischmann's credibility, in particular to explain why a person in Fischmann's position might not have testified truthfully in previous proceedings about her relationship with her pimp. The district court considered the probative value of Dr. Lee's testimony and admitted most of it. Taylor's main contention is that the district court failed to hold a gatekeeping hearing to weigh the testimony's admissibility. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (explaining the factors to be considered in determining the admissibility of expert testimony); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (discussing the role of gatekeeping hearings for expert testimony). Yet the district court held such a hearing.

Not only did the district court ensure that Dr. Lee's testimony was screened at a gatekeeping hearing, but it correctly ruled that the testimony was relevant to the issues in the case. Under Federal Rules of Evidence 401 and 402, evidence is relevant if it tends to make the existence of any pertinent fact more or less probable. See Fed.R.Evid. 401, 402.

■ By and large, the relationship between prostitutes and pimps is not the subject of common knowledge. See *generally* Note, "Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution," 103 *Yale L.J.* 791, 793–96 (1993) (citing research on the abuse of prostitutes by pimps and noting that the full extent of such abuse remains unknown); Ann M. Coughlin, "Of White Slaves and Domestic Hostages," 1 *Buff. Crim. L.Rev.* 108, 120–21, 124–25 (1997)

(discussing how people puzzle over why a prostitute does not leave an abusive relationship with a pimp). A trier of fact who is in the dark about that relationship may be unprepared to assess the veracity of an alleged pimp, prostitute, or other witness testifying about prostitution. The D.C. Circuit came to such a conclusion when it considered the relevance of expert testimony (also provided by Dr. Lee) on the relationship between pimps and prostitutes during the criminal trial of an alleged pimp. *U.S. v. Anderson*, 851 F.2d 384, 394 (D.C.Cir.1988)("Dr. Lee's testimony could have helped the jury to determine the credibility of the government's prostitute-witnesses, which counsel for appellant had sought to undermine on cross-examination . . .").

### Money Laundering

■ In August and September 1997, Taylor entered into two financial transactions that the government claims were financed with money from specified unlawful activity criminalized under 18 U.S.C. §§ 1957 and 1956(a)(1)(A)(i). Taylor used a credit card to pay for airline tickets he and Fischmann used to fly from Phoenix to Las Vegas in July. On August 8, he paid for that credit card charge with a money order purchased at Western Union. It appears that he used a similar arrangement to pay for other travel charges connected to prostitution activity. The following month, Taylor was trying to close on the purchase of a home in Las Vegas. To do so, he purchased a cashier's check for $16,500. Of that money, $5,500 came from a loan to Taylor by his real estate broker. Taylor provided the balance from his own funds.

■ Taylor argues that the government did not offer sufficient evidence that the money in question came from specified unlawful activity, and not from legal sources. This argument is unconvincing. The government sought to prove the origin of the funds by presenting evidence that Taylor had no money other than what he

was deriving from specified unlawful activity. This is a permissible approach to proving that funds in allegedly illicit transactions violate the money laundering statutes. *See U.S. v. Hanley,* 190 F.3d 1017, 1025 (9th Cir.1999)(finding the approach permissible for Section 1957 offenses); *U.S. v. Marbella,* 73 F.3d 1508, 1514 (finding the approach permissible for Section 1956 offenses).

■ Moreover, the tainted funds could be derived from violations of 18 U.S.C. § 2423(a) even if Taylor's acquisition of the funds did not occur at the moment that Taylor violated that law. *See* 18 U.S.C. § 1956(c)(7)(A)(including offenses under 18 U.S.C. § 2423 in the definition of specified unlawful activity); 18 U.S.C. § 1957(f)(3)(incorporating the definition of specified unlawful activity in Section 1956). Both 18 U.S.C. §§ 1957 and 1956 focus on money derived from, or obtained as proceeds from, specified unlawful activity. Congress did not restrict coverage of the money laundering statutes to transactions involving money that had been immediately gained in the course of committing a specified unlawful activity.

Here, the government offered sufficient evidence so that a reasonable jury could find beyond a reasonable doubt that all the money Taylor used to purchase the money order and cashier's check came from specified unlawful activities. The money Taylor had earned from his consulting on the documentary about pimps was long since spent, and his musical career did not yield any financial resources. There was, moreover, sufficient evidence for the jury to find that he received little or no income from other legal activities. Although some testimony suggested that Taylor could have gotten money from the legal escort activities of Fischmann and other women who worked for him as prostitutes in Nevada, the jury could have concluded reasonably that such testimony was not credible. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)(noting that a reasonable jury need not find all testimony equally credible).

Taylor also argues that the district court's instructions to the jury concerning the money laundering charges did not adequately specify that the money for the transactions had to come from specified unlawful activity. The district court's instructions were nonetheless adequate because they did in fact explain that the money for the transactions in question had to be derived from specified unlawful activity, to wit, "transportation of minors or adults in interstate commerce, with intent that such individuals engage in prostitution."

### Other Contentions

■ Taylor makes two other arguments against his conviction. First, Taylor argues that police officers violated his rights when they executed a warrant to arrest him and search his residence, because, after announcing their presence, they did not wait long enough before attempting forced entry. Under the Fourth Amendment and 18 U.S.C. § 3109, individuals have a right to have the police knock and announce their presence before entering a private residence to execute a valid warrant. In Taylor's case, the police knocked, announced their presence, and waited approximately a minute before attempting to enter Taylor's residence forcefully. This satisfies the standards to which police are held in order to protect individuals' privacy rights. *U.S. v. Woodring,* 444 F.2d 749, 751 (9th Cir.1971). The fruits of the search were properly admitted.

■ Nor was there any error by the district court in admitting Taylor's prior bad acts, including his failure to file tax returns and trips in furtherance of prostitution not charged in the indictment. The district court has discretion to admit evidence that sheds light on disputed issues of fact at trial if the court balances the probative value of such evidence against its prejudicial effect. *U.S. v. Thomas,* 893 F.2d 1066, 1071 (9th Cir.1990). In this case the district court engaged in such

balancing and properly admitted the evidence as probative of the use of illegal, rather than legal, income to finance prostitution activities.

In sum, neither the investigation of Taylor's criminal activity nor his trial were marred by error. The district court is therefore

AFFIRMED.