10-4819-cr
United States v. Lewis

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 18th day of July, two thousand twelve.

PRESENT:
>        **DENNIS JACOBS,**
>             **<u>Chief Judge</u>,**
>        **DENNY CHIN,**
>        **CHRISTOPHER F. DRONEY**
>             **<u>Circuit Judges</u>.**

- - - - - - - - - - - - - - - - - - - -X

**UNITED STATES,**
>        **<u>Appellee</u>,**

>        **-v.-**                                                    **10-4819-cr**

**MARIO S. LEVIS,**
>        **<u>Defendant-Appellant</u>.**
- - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | Elliot H. Scherker (Jeffrey B. Sklaroff and Brigid F. Cech Samole, <u>on the brief</u>), Greenberg Traurig, P.A., Miami, FL. |
| **FOR APPELLEE:** | Brent S. Wible (Katherine Polk Failla, <u>on the brief</u>), Assistant United States Attorneys, <u>for</u> Preet Bharara, United States Attorney for the Southern District of New York, New York, NY. |

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Griesa, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED in part, VACATED in part, AND REMANDED.**

Defendant-Appellant Mario S. Levis appeals his conviction and sentence for one count of securities fraud, 15 U.S.C. § 78j(b), and two counts of wire fraud, 18 U.S.C. § 1343. He raises six issues on appeal. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**[1]** Levis was the Senior Executive Vice President and Treasurer of Doral Financial Corporation ("Doral") at the time he assured investors that certain risks were capped. Although not all contracts had embedded caps, he sought to defend against these charges on the ground that transactions involving hedging afforded the same assurance, or (at least) he reasonably thought so. On appeal he argues that the district court erroneously barred him from presenting his hedging defense.

"A district court abuses its discretion when . . . its evidentiary rulings are arbitrary, irrational, or simply erroneous as a matter of law." United States v. Cadet, 664 F.3d 27, 32 (2d Cir. 2011).

The district court erred in barring Levis from presenting a hedging defense as to Count Three: the wire fraud count predicated on Levis's misstatements regarding contractual caps on the pass-through rates of the mortgage pools. Doral's hedges took various forms, such as derivative financial instruments, futures and options, forward sale commitments, interest rate swaps, interest rate collars, and options to repurchase the mortgage pools. These measures were not contractual caps, which would have guaranteed a minimum pass-through rate for Doral, and therefore would have been the safest measure. But these hedges might have functioned as effective caps that minimized the overall financial risk to Doral in the event that a rise in interest rates impaired Doral's income from the mortgage sales.

One element of wire fraud is "a scheme to defraud." United States v. Pierce, 224 F.3d 158, 165 (2d Cir. 2000); accord 18 U.S.C. § 1343. "To establish [that] . . . element, the government must prove (i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations." Pierce, 224 F.3d at 165 (internal citations omitted). Evidence that the hedges functioned as a cap could have raised doubts as to materiality. The district court therefore erred in excluding Levis from presenting such evidence, including lay and expert testimony involving the existence of hedges and their effectiveness. Accordingly, Levis's conviction as to the third count must be vacated and the matter remanded for re-trial.

However, the district court did not abuse its discretion in barring testimony and evidence involving hedges with regard to Count Five (wire fraud) and Count One (securities fraud), which are based on Levis's misrepresentation that Doral had been the subject of two independent evaluations. As to each of those counts, the Government presented substantial evidence that neither of the two valuations was independent. Although the Government's evidence that hedging was ineffective may have been used to corroborate the impact of Levis's misrepresentations, the existence and effectiveness of hedging is irrelevant to whether there were, in fact, two independent evaluations. Because hedging was legally irrelevant to whether Levis committed securities and wire fraud on that basis, the district court did not err in excluding Levis's hedging defense as to those counts.[1]

There is also no danger that the now-vacated wire-fraud conviction involving contractual caps spilled over to

[1] The jury convicted Levis as to Count One based on misrepresentations regarding caps *and* misrepresentations regarding the two independent valuations. A-1785 (jury verdict form). Even if the verdict as to caps must be vacated due to the exclusion of Levis's hedging defense, his misrepresentation involving the valuations is an independent basis that supports the verdict of conviction on Count One. Our decision with regard to Count Three therefore does not require us to vacate Levis's conviction as to Count One (securities fraud).

Levis's convictions for misrepresentations involving independent valuations. "A defendant bears an extremely heavy burden when claiming prejudicial spillover." United States v. Griffith, 284 F.3d 338, 351 (2d Cir. 2002). Prejudicial spillover requires, inter alia, an evaluation of "the strength of the government's case" as to the counts in question. Id. The evidence that Levis misrepresented that Doral had been subject to two independent evaluations is so overwhelming that there is no danger of spillover and no "'prejudice so substantial as to amount to a miscarriage of justice.'" Id. (quoting United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988)). In any event, Levis has forfeited any such argument by failing to raise it on appeal. See United States v. Pereira, 465 F.3d 515, 520 n.5 (2d Cir. 2006).

**[2]** Levis contends that his trial did not commence within 70 days of the public filing of his indictment, as required by the Speedy Trial Act, and that no exception to the Speedy Trial Act was satisfied. See 18 U.S.C. § 3161(h)(1)-(7).

In May 2009, the district court granted Levis's unopposed motion for a lengthy adjournment of the September 2009 trial date because Levis anticipated receiving substantial discovery from the Government. In March 2010, just prior to trial, Levis moved to dismiss the indictment because the district court had not made the findings necessary to satisfy the ends-of-justice exception to the Speedy Trial Act when it granted Levis's motion for adjournment. See 18 U.S.C. § 3161(h)(7)(A).

The Speedy Trial Act requires that the findings necessary for the ends-of-justice exception "be made, if only in the judge's mind, before granting the continuance," and that those findings need only "be put on the record by the time a district court rules on a defendant's motion to dismiss." Zedner v. United States, 547 U.S. 489, 506-07 (2006).

There was no violation of the Speedy Trial Act because, before the district court formally denied Levis's motion to dismiss, it ratified a letter lodged by the Government, confirming that the district court "ha[d] made the requisite finding that the ends of justice warranted the continuance . . . for the reasons stated in" Levis's motion for adjournment. A-130-31.

4

**[3]** Levis contends that venue in the Southern District of New York was improper as to Count Five because there was no direct evidence that he caused Doral's 10-K report (containing the misrepresentation regarding the independent valuations) to be transmitted to that district. The Government bears the burden of proving venue by a preponderance of the evidence. United States v. Magassouba, 619 F.3d 202, 204 (2d Cir. 2010). We review de novo the sufficiency of the evidence supporting the jury's finding that venue was proper. United States v. Tzolov, 642 F.3d 314, 318 (2d Cir. 2011).

"[V]enue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur . . . or (2) it is foreseeable that such an act would occur in the district of venue [and it does]." United States v. Royer, 549 F.3d 886, 894 (2d Cir. 2008) (second alteration in original) (internal quotation marks omitted). When the case involves publication on the internet, venue is proper in any district where it is reasonably foreseeable that the material will be accessed. See id. at 895; United States v. Rowe, 414 F.3d 271, 279 (2d Cir. 2005).

It was reasonably foreseeable that Doral's 10-K, which is available on the internet through the Securities and Exchange Commission's website, would be accessed by someone in the Southern District of New York. Levis knew that at least one of the analysts reporting on Doral (Omotayo Okusanya, a research analyst at UBS) was based in New York and would review the report. Levis informed Okusanya that the 10-K would be released soon and that soon afterward there would be a conference call with Doral's management--a call in which Okusanya participated from his office in Manhattan. Venue in the Southern District of New York was proper.

**[4]** Levis contends that he is entitled to a new trial based on improper jury instructions. The propriety of a jury instruction is a question of law that we review de novo. United States v. George, 386 F.3d 383, 397 (2d Cir. 2004). "To secure reversal based on a flawed jury instruction, a defendant must demonstrate both error and ensuing prejudice." United States v. White, 552 F.3d 240, 246 (2d Cir. 2009). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not

adequately inform the jury on the law." United States v. Walsh, 194 F.3d 37, 52 (2d Cir.1999) (internal quotation marks omitted).

A defendant engages in wire fraud when he intentionally deprives a victim of "potentially valuable economic information . . . that could impact on economic decisions" made by the victim. United States v. Wallach, 935 F.2d 445, 463 (2d Cir. 1991); accord United States v. Dinome, 86 F.3d 277, 283 (2d Cir. 1996); United States v. D'Amato, 39 F.3d 1249, 1257 (2d Cir. 1994). Levis deprived investors of information that could impact their investment decisions by falsely claiming that Doral had been subject to two independent evaluations that confirmed Doral's own internal valuations.

Levis argues that the district court erred by failing to instruct the jury that the information withheld from investors must have some independent value or must bear on the ultimate value of the transaction. See United States v. Mittelstaedt, 31 F.3d 1208, 1217 (2d Cir. 1994). Even if this was an appropriate statement of the law,[2] Levis cannot show prejudice. By misrepresenting that Doral had been valued by two independent evaluators, Levis deprived Doral's actual and potential investors of information that had independent value and that had bearing on the ultimate value of Doral stock. Even if Doral's internal evaluations were correct, independent valuations would be of far greater significance to possible investors and would substantially affect the market value of Doral's stock.

[5] Levis also contends that the district court erred by failing to properly instruct the jury that he is not guilty of wire fraud if he acted with a good faith belief that no harm would befall Doral's investors.

---

[2] Mittelstaedt involved the failure of a government employee to reveal a conflict of interest and fulfill one's fiduciary obligation to the local government. 31 F.3d at 1217. Because the mail and wire fraud statutes do not criminalize government ethics law, we concluded there was no fraud. Id. The cases since Mittelstaedt, have limited it to its compelling factual setting. See, e.g., Dinome, 86 F.3d at 284.

The district court charged the jury that

> [G]ood faith is a defense to a charge of fraud. . . . An honest belief in the truth of a representation is a good defense no matter how inaccurate the statement may turn out to be. In considering whether or not the defendant acted in good faith, you are instructed that a belief by the defendant, if such a belief existed, that ultimately everything would work out favorably for investors does not require a finding by you that the person acted in good faith.

T:3719-20. The district court also instructed the jury that the Government must prove that Levis "intended to deceive and to thereby cause harm to the victims of this scheme," T:3727, and that Levis "would be guilty of intending to inflict harm on investors if he intended to put false information before them which would deprive them of the ability to make investment decisions based on actual facts," T:3728.

A jury instruction is considered in combination with other instructions to determine whether the instructions, as a whole, correctly describe the law in this Circuit. See United States v. Mitchell, 328 F.3d 77, 82 (2d Cir. 2003). Taken together, these instructions accurately state the law of this Circuit: even if Levis meant to cause no ultimate harm to investors because he honestly believed Doral to be properly valued, he intended to cause them "immediate harm" by denying them the "right 'to control [their] assets by depriving [them] of the information necessary to make discretionary economic decisions.'" See United States v. Ferguson, 676 F.3d 260, 280 (2d Cir. 2011) (as amended) (quoting United States v. Rossomando, 144 F.3d 197, 201 n.5 (2d Cir. 1998)); accord United States v. Leonard, 529 F.3d 83, 91-92 (2d Cir. 2008).[3]

_____

[3] Levis's reliance on Rossomando is misplaced. In Rossomando, the defendant believed that he was causing no harm (immediate or otherwise), whereas Levis intentionally deprived Doral's investors of important information even if he may have believed that his misrepresentation would cause no ultimate harm because he thought Doral was a wise investment. See Ferguson, 676 F.3d at 280 (discussing

7

The district court did not err in its instruction to the jury regarding Levis's good-faith defense.

**[6]** Levis argues that this is one of the "rare case[s]" in which an improper statement in the Government's summation was so prejudicial as to warrant a new trial. See United States v. Rodriguez, 968 F.2d 130, 142 (2d Cir. 1992). A defendant who seeks to overturn a conviction based on a prosecutor's comment in summation must sustain the "heavy burden" of showing that "the comment, when viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced [the defendant], depriving him of a fair trial." United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (internal citation and quotation marks omitted).

The Government's summation seemed to intimate that the defense's strategy was dishonest. When alerted, the Government apologized to the jury and disavowed any such inference. In that light, it cannot be said that the statement was so severe and significant as to prejudice Levis at all--much less deprive him of his right to a fair trial.

Levis also claims that the Government unfairly exploited the exclusion of the hedging defense. This argument is obviated by our ruling that it was not error to exclude the hedging defense (as to the surviving counts).

We have considered all of Levis's additional arguments and find them to be without merit. Accordingly, the judgment of the district court is AFFIRMED in part, and VACATED in part. The matter is REMANDED for further proceedings consistent with this decision.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

Rossomando, 144 F.3d at 200-03 & n.5). Rossomando has been "limited to the quite peculiar facts that compelled [its] result." Ferguson, 676 F.3d at 280 (alteration in original) (internal quotation marks omitted).