RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0109p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 23-3048

LANCE TOBIAS,

*Defendant-Appellant.*

─────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:22-cr-00164-1—John R. Adams, District Judge.

Argued:  December 7, 2023

Decided and Filed:  May 13, 2024

Before:  BUSH, LARSEN, and MURPHY, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ARGUED:**  Timothy F. Sweeney, LAW OFFICE OF TIMOTHY F. SWEENEY, Cleveland, Ohio, for Appellant.  Margaret A. Sweeney, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Timothy F. Sweeney, LAW OFFICE OF TIMOTHY F. SWEENEY, Cleveland, Ohio, for Appellant.  Margaret A. Sweeney, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────

## OPINION

─────────────

JOHN K. BUSH, Circuit Judge.  Lance Tobias ran an operation shipping and receiving drugs and cash for dealers and their customers.  After he pleaded guilty to crimes involving the possession and distribution of fentanyl, the district court denied Tobias "safety-valve" relief, an

offense-level reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 afforded to defendants who make full disclosures to the government, citing Tobias's failure to disclose any information regarding his customers. Tobias consequently qualified for a ten-year mandatory minimum under 21 U.S.C. § 841(b)(1)(B). The court imposed the mandatory minimum and a $100,000 fine without calculating Tobias's sentencing range under the United States Sentencing Guidelines. Tobias now challenges the district court's denial of safety-valve relief and his sentence. Because the district court's denial of safety-valve relief was supported by the record and any sentencing error survives plain-error review, we affirm.

## I.

Tobias's criminal activities came to light through the efforts of Inspector Michael Adams of the United States Postal Inspector Service in Cleveland, Ohio. On March 31, 2020, Inspector Adams intercepted a suspicious package en route to Los Angeles, California. The sender, "J. McKinley," was known to have several drug trafficking convictions in Cuyahoga County. The package listed "Lance T" as the recipient, and gave an address associated with several intercepted packages containing cash that had been sent by U.S. mail from Ohio to California from 2013 to 2020. It was the recipient's address listed on the intercepted package that led authorities to Tobias. Inspectors concluded that McKinley was likely sending Tobias cash to purchase controlled substances, including fentanyl.

On May 27, Adams intercepted another suspicious package sent from Culver City, California to a "J. Ransby" in Beachwood, Ohio. Inside, inspectors found 295.75 grams of light blue pills that appeared to be oxycodone. Further testing revealed that the package's contents were counterfeit pressed pills containing fentanyl and 4-ANPP, a direct precursor to fentanyl and some fentanyl analogues. Tobias's fingerprints were found on paper that was used as lids for the pills.

This evidence led to Tobias's indictment on April 13, 2022, in the Northern District of Ohio. He was charged with conspiracy to distribute and possess with intent to distribute fentanyl, 21 U.S.C. § 846 (Count 1); distribution of fentanyl, 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count 2); and use of the mail to facilitate a felony drug offense, 21 U.S.C. § 843(b) (Count 3).

At his May 5 arraignment, Tobias pleaded not guilty and was ordered detained pending trial on July 11, 2022.

On July 7, 2022, the government filed a notice of Tobias's 1994 conviction for armed bank robbery. Because that conviction was for a "serious violent felony" and his current charges involved at least 40 grams of a mixture or substance containing a detectable amount of fentanyl, Tobias was subject to a mandatory ten-year sentence, a maximum $8,000,000 fine, and a mandatory 8 years of supervised release if convicted. 21 U.S.C. § 841(b)(1)(B)(vi). Tobias signed a written plea agreement later that day, pleading guilty to Counts 1 and 2 and stipulating that his offenses involved 295.75 grams of fentanyl.

The parties determined that Tobias's base offense level was 28 after referencing the Sentencing Guidelines for offenses involving between 280 and 400 grams of fentanyl (not fentanyl mixture, as described in Counts 1 and 2). *Compare* U.S.S.G. § 2D1.1(c)(6), *with id.* § 2D1.1(c)(5). Tobias acknowledged that, if the court determined that he met the criteria for the safety valve in U.S.S.G. § 5Cl.2, a two-level reduction would apply pursuant to § 2Dl.1(b)(18). Applying the safety valve would also exempt Tobias from the ten-year mandatory minimum. Lastly, the government agreed to recommend a 3-level reduction after Tobias accepted responsibility.

At Tobias's change-of-plea hearing, also on July 7, 2022, the court accepted his guilty plea but advised him that it was not obligated to follow the Guidelines calculation agreed to by the parties. It added that it would consider not only the Guidelines, but also the nature and circumstances of the offense, "[t]he type of drug being fentanyl, obviously very important, among other factors." R.47, PageID 300. Consistent with these comments, the district court filed a notice of a possible upward variance on October 6.

Tobias conferred with the government, including an Assistant United States Attorney and two United States Postal Inspectors, to make his safety-valve proffer. According to the AUSA, Tobias was "extremely forthright with the government," and "provided information about others' involvement to the extent that it bore on his involvement in the case." R.48, PageID 312. Tobias reported that his role in the drug trade was that of a "pitcher" and "catcher" for other players—as

his counsel explained, Tobias was "like a UPS store for traffickers."  *Id.* at PageID 313, 319.  As pitcher, Tobias packaged and mailed drugs for dealers who told him where to send them, usually charging between $800 to $1000 depending on the type of drug.  As catcher, he received packages containing cash and transported them to his customers, keeping 5% of the money as commission.  Tobias recounted that his operation had been going on since 2004 and the most he ever made in a year was $60,000.  He claimed that he did not know who he was sending packages to or receiving money from.

The probation department submitted the first presentencing report on October 5, 2022.  The probation officer concluded that Tobias had a criminal history score of zero because his armed robbery conviction was over 20 years old, placing him in criminal history category I.  Because Tobias pleaded guilty to charges involving a fentanyl mixture, the probation officer calculated the base offense level as 30, rather than 28 as the parties agreed in the plea agreement.  *See* U.S.S.G. § 2D1.1(c)(5).  The probation officer determined that Tobias should receive a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 and a 2-level safety-valve reduction because he met the criteria set forth in 18 U.S.C. § 3553(f)(1)–(5) and U.S.S.G. § 5C1.2(a).  Ultimately, with a total offense level of 25 and criminal history category of I, Tobias's recommended Guidelines range was 57 to 71 months.  The probation officer did not recommend that Tobias be made to pay a fine.

At Tobias's sentencing hearing on October 21, the district court expressed dissatisfaction with Tobias's safety-valve proffer.  It was especially frustrated with the government's insistence that Tobias had been "extremely forthright" in his proffer: although he had been operating for almost 20 years, Tobias did not identify a single individual for whom he sent or received drugs and cash.  The court was also skeptical that Tobias had been honest about the number of packages he sent and received every year.  Although he reported that the most that he earned annually from the endeavor was $60,000, Tobias owned a $1 million house, vintage cars, and a Rolex.  All while earning only $2,700 a month as a home health aide.  The district court adjourned sentencing until the government could provide it with notes from Tobias's safety-valve proffer meeting.

Sentencing resumed on January 4, 2023. Tobias reiterated that the information he provided in his safety-valve proffer was complete. Although the court wanted him to identify customers, Tobias claimed he was unable to do so. He insisted he only dealt with intermediaries, not the customers themselves. Moreover, he claimed that his business did not involve repeat customers but was more like a revolving door. The district court was not convinced. Given the longevity of Tobias's operation, the number of customers he serviced, the amount of money he made, and the assets he accumulated, the district court did not believe that he had proffered all the information he possessed. Accordingly, the court determined that Tobias was not eligible for safety-valve relief and the ten-year mandatory minimum applied.

The court next considered the 18 U.S.C. § 3553(a) factors. It determined that a lengthy sentence was necessary because of the quantity and type of drugs Tobias was dealing with, because he shipped the drugs across state lines, and because he was apparently not deterred by his previous federal sentence. Indeed, Tobias had begun his shipping operation while he was on supervised release. The court concluded that the information Tobias presented to mitigate his sentence did not "in any way, shape or form" change the fact that counterfeit pills containing fentanyl, like the ones he was shipping around the country, are "literally killing people on a regular basis[.]" *Id.* at PageID 281–82.

The district court sentenced Tobias to the mandatory minimum 120 months on Counts 1 and 2 to be served concurrently, followed by an 8-year term of supervised release. It also imposed a $100,000 fine. The court did not calculate Tobias's Guidelines range after it denied him safety-valve relief and considered the § 3553(a) factors, nor did it consider whether he was entitled to the three-level reduction for acceptance of responsibility before it imposed the sentence. The court asked whether Tobias had any objections to the sentencing under *United States v. Bostic*. 371 F.3d 865 (6th Cir. 2004). Tobias's counsel answered no.

**II.**

**A. Denial of Safety-Valve Reduction**

Tobias first contends that the district court clearly erred when it declined to reduce his offense level pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Specifically, Tobias argues

that the district court based its denial of safety-valve relief on an unsupported determination that he did not truthfully disclose all information concerning his offense.

A district court's refusal to apply the safety-valve adjustment is a factual finding we review for clear error. *United States v. Adu*, 82 F.3d 119, 123–24 (6th Cir. 1996). If there is "substantial factual evidence on the record to support the district court's decision not to grant a safety valve reduction, there was no clear error." *United States v. Haynes*, 468 F.3d 422, 427 (6th Cir. 2006).

Section 3553(f) of the criminal code and § 5C1.2 of the Guidelines provide relief from a statutory mandatory minimum sentence if a defendant can prove five criteria by a preponderance of the evidence. *United States v. Barron*, 940 F.3d 903, 913–14 (6th Cir. 2019). If the defendant meets all criteria, the district court lacks discretion to deny him safety-valve relief and must reduce his base offense level by two. *Id.* at 914; U.S.S.G. § 2D1.1(c)(18). Only the fifth criterion is in dispute here: Tobias must have "not later than the time of the sentencing hearing . . . truthfully provided to the Government all information and evidence [he] ha[d] concerning the . . . offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5).

Under this requirement, a defendant must "reveal a broader scope of information about the relevant criminal conduct" than is necessary for other Guidelines reduction provisions, such as acceptance of responsibility. *United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001) (citations omitted). If a defendant commits a drug offense that "depends upon the active participation of other people," he must disclose information about those individuals' participation. *United States v. Maduka*, 104 F.3d 891, 894 (6th Cir. 1997). This includes "complete information regarding the immediate chain of distribution." *Id.* That said, the defendant is only obligated to produce the information he actually possesses. *Barron*, 940 F.3d at 917. And because the safety valve is intended to protect less culpable defendants who occupy a relatively low rung on the criminal enterprise ladder, such individuals will naturally have less information than higher-ups. *United States v. Carpenter*, 142 F.3d 333, 336 (6th Cir. 1998).

Tobias's argument turns on whether the district court's determination that he did not provide the government with enough information to warrant safety-valve relief was "based solely on speculation, devoid of any factual support." *Barron*, 940 F.3d at 917 (quoting *United States v. Collins*, 924 F.3d 436, 443 (7th Cir. 2019)). It was not. The district court cited plenty of support for its denial, both at the sentencing hearings and in a subsequent order. Namely, that, despite being in business for almost twenty years, Tobias did not volunteer a single name, alias, phone number, or address for any of his customers. He claimed that his relatively low position in the distribution chain and indirect interactions with customers limited the information he could proffer. But, as the district court explained in its order, "it is inconceivable that Tobias sent out dozens of packages every year, reaped a substantial monetary benefit, and could provide not even the slightest detail about those providing him the drugs for mailing." R.36, PageID 236.

Tobias makes much of the government's argument in support of safety-valve relief before the district court. But as explained above, it is Tobias's burden, not the government's, to prove that he is entitled to safety-valve relief. *Barron*, 940 F.3d at 914. It is unfortunate for Tobias that the government either took him at his word that he could not provide an iota of information about his customers, or else did not solicit that information. But ultimately, it was up to him to volunteer it. *O'Dell*, 247 F.3d at 675. As the district court detailed in its order, Tobias's proffer may have met the requirements of a reduction warranted by acceptance of responsibility, but his obligations to warrant a safety-valve reduction were much broader. We therefore affirm the district court's denial of safety-valve relief.

## B.  Failure to Calculate Guidelines Range Before Imposing Sentence

Tobias next contends that his sentence is procedurally unreasonable because the district court failed to calculate his Guidelines range before imposing the mandatory minimum sentence and a $100,000 fine.

We usually review the reasonableness of a defendant's sentence, including the imposition of a fine, for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Blackwell*, 459 F.3d 739, 770 (6th Cir. 2006) ("This Court reviews the district court's imposition of a fine as a part of a defendant's sentence for abuse of discretion."). But, when, as

here, the defendant fails to object at his sentencing hearing, we review for plain error. *United States v. Fowler*, 819 F.3d 298, 304 (6th Cir. 2016); *United States v. Lumbard*, 706 F.3d 716, 720 (6th Cir. 2013) (explaining that, when a defendant fails to object to the imposition of a fine at sentencing, we review for plain error).

To overcome that deferential standard, Tobias must show that (1) the district court committed a procedural error that he did not waive; (2) that the error is clear or obvious; and (3) that it affected his substantial rights. *Rosales-Mireles v. United States*, 585 U.S. 129, 135 (2018); *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016); *accord United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). If he can satisfy those three "threshold requirements," we will grant relief only if we find "that the error had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings.'" *Greer v. United States*, 593 U.S. 503, 508 (2021) (quoting *Rosales-Mireles*, 585 U.S. at 135). "Satisfying all four prongs of the plain-error test 'is difficult.'" *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

**1. Obvious or Clear Error**

At the first two steps of plain-error review, we look for "an error or defect" that is "clear or obvious." *Puckett v. United States*, 556 U.S. 129, 135 (2009). Post-*Booker*, the Sentencing Guidelines are not mandatory, but "the district court *must* consider the advisory Guidelines range." *Fowler*, 819 F.3d at 304 (emphasis in original) (collecting cases). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49. We have held that the "failure to calculate the Guidelines range renders a sentence procedurally unreasonable" where it "does not allow for meaningful appellate review." *Fowler*, 819 F.3d at 305–06; *see also United States v. Turner*, 536 F. App'x 614, 619–20 (6th Cir. 2013) (distinguishing its facts from cases where the sentencing court's failure to acknowledge the Guidelines range "*in combination* with a failure to articulate reasons for imposing the sentence . . . prevented meaningful appellate review" (emphasis in original)). A district court imposing a fine must, in addition to considering the 18 U.S.C. § 3553(a) factors (including the applicable Guidelines range), consider "the fine-

specific factors set forth in 18 U.S.C. §§ 3571 and 3572, and U.S.S.G. § 5E1.2(d)." *Lumbard*, 706 F.3d at 726 (citation and quotation marks omitted). These include:

> defendant's income; earning capacity; financial resources; the burden on the defendant and his dependents; pecuniary loss inflicted on others as a result of the offense; whether restitution is ordered; the need to deprive the defendant of illegal gains; and the need to promote respect for the law, provide just punishment, and adequate deterrence.

*Id.* (quoting *United States v. Tosca*, 18 F.3d 1352, 1354 (6th Cir. 1994)). The sentencing court need not make "detailed findings" for these factors, as we have required "only an indication that the court considered ability to pay and the other factors listed in the guideline." *United States v. Sydnor*, 762 F. App'x 284, 287 (6th Cir. 2019).

The district court here clearly erred when it failed to calculate Tobias's Guidelines range before it imposed a ten-year sentence and $100,000 fine. The government submits that the court calculated the Guidelines range when it imposed the mandatory minimum. But "[r]eference to the mandatory minimum is no substitute for the explicit requirement to calculate [a defendant's] Guideline" and does not "constitute calculating [a defendant's] Guidelines range." *United States v. Gates*, 48 F.4th 463, 470 (6th Cir. 2022). True, the district court here did more than the court in *Gates*—it at least mentioned the base offense levels and sentencing ranges contemplated by the plea agreement and presentence report. But it failed to consider whether Tobias qualified for an offense-level reduction for acceptance of responsibility, and failed to calculate his Guidelines range after it denied him safety-valve relief. Consequently, it also failed to consider the sentencing range before imposing the $100,000 fine, as it was required to do under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3572(a). Regardless of whether Tobias's prior offense and current charges required the district court to impose a ten-year sentence, this was a clear error.

## 2. Affecting Tobias's Substantial Rights

Having established that the district court committed a procedural error, we next consider whether the error affected Tobias's substantial rights. In other words, whether there is a reasonable probability that, but for the court's failure to calculate Tobias's Guidelines sentencing range, "the outcome of the proceeding would have been different." *Rosales-Mireles*, 585 U.S. at 134–35 (citations omitted). It would not have been.

Where "the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Molina-Martinez*, 578 U.S. at 201. The defendant will usually not be required to show more. *Id.* The wrinkle here is that the district court did not *incorrectly* calculate Tobias's Guidelines range—it failed to calculate his Guidelines range altogether. In *Gates*, we made clear that these errors are not the same. *See* 48 F.4th at 471. But, we ultimately declined to answer "[w]hether a sentence may be affirmed when the district court fails to calculate the Sentencing Guidelines" under a harmless-error analysis. *Id.* Unlike Tobias, the defendant in *Gates* had preserved the procedural-reasonableness challenge, so the government bore the burden to prove "with certainty" that the error was harmless. *Id.* (citation omitted). And it was unable to make that demanding showing. *Id.*

We must answer that question now, and we hold that a sentence can be affirmed when the district court fails to calculate the Guidelines range, but only in the limited circumstances described in *Molina-Martinez* and present here. Failing to calculate a defendant's Guidelines range altogether may, in some circumstances, be a more egregious Guidelines error than miscalculating the range, but it is a Guidelines error all the same. It therefore makes sense to extend the logic of *Molina-Martinez* to such circumstances. Of course, as in cases where the district court miscalculates the Guidelines range, failure to calculate the Guidelines range completely "can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez*, 578 U.S. at 198. This is so even where the defendant's sentence ultimately falls within the correct range. *Id.* And "[a]bsent unusual circumstances, [a defendant] will not be required to show more" than "pointing to" that error to demonstrate that he has been prejudiced. *Id.* at 201.

But, even when such an error occurs, there are "instances when . . . a reasonable probability of prejudice does not exist." *Id.* at 198, 200. For example, when the record shows that "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range," or when the court provides an explanation that makes clear that it selected the sentence based "on factors independent of the Guidelines." *Id.* at 200. Put differently, if "the district court would have imposed its sentence regardless of the Guidelines range," then the error

is harmless.  *United States v. Morrison*, 852 F.3d 488, 491 (6th Cir. 2017) (citing *Molina-Martinez*, 578 U.S. at 200).  In those instances, we need not remand for resentencing.

That is the case here: Tobias cannot show that the district court's failure to calculate his Guidelines range before imposing the statutorily mandated minimum term of imprisonment affected his substantial rights.  After it declined to reduce his offense level under the safety valve, the court was required to impose a sentence of at least ten years based on Tobias's prior conviction and the amount of fentanyl mixture he stipulated to.  *See* 21 U.S.C. § 841(b)(1)(B)(vi).  Its failure to calculate the Guidelines sentencing range and to consider a base-offense level reduction for acceptance of responsibility thus did not affect Tobias's substantial rights because his sentence was not based on the Guidelines range, and he could not have been sentenced to a shorter term of imprisonment.  *United States v. Johnson*, 564 F.3d 419, 423 (6th Cir. 2009) ("Where a mandatory minimum sentence exceeds the otherwise applicable Guidelines range . . . it replaces that Guidelines range."); *see also United States v. Wheeler*, 535 F.3d 446, 458 (6th Cir. 2008) (holding that, where a district court was obligated by statute to impose a life sentence, "any sentencing error would be harmless, as [the defendant] cannot receive a sentence lower than the statutory minimum"); *United States v. Adams*, 655 F. App'x 312, 321–22 (6th Cir. 2016) (per curiam) (same); *United States v. Briggs*, 431 F. App'x 389, 397 (6th Cir. 2011) (same).

Whether the district court would have imposed the same $100,000 fine had it calculated Tobias's offense level and Guidelines range is a different question.  With the safety-valve relief, the probation officer calculated the Guidelines fine range as between $20,000 and $8,000,000.  This calculation, however, rested on the safety-valve relief that the district court ended up denying.  If the court had still chosen to reduce Tobias's offense level for acceptance of responsibility, the lowest the offense level could have been was 27.  The range thus would have become $25,000 to $8,000,000.  U.S.S.G. § 5E1.2(c)(3), (4).  And if the court had denied any reduction for acceptance of responsibility, the range would have become $30,000 to $8,000,000.  *See id.*  All of these changes would have had only a modest impact on the ultimate range because the statutory maximum (here, $8 million) becomes the Guidelines maximum when it exceeds the maximum amounts listed in § 5E1.2(c)(3).  *Id.* § 5E1.2(c)(4); *see* 21 U.S.C. § 841(b)(1)(B).

No circuit court as far as we are aware has yet to have an occasion to decide whether *Molina-Martinez*'s holding extends to a sentencing court's imposition of a fine—that is, whether a sentencing court's reliance on an incorrect Guidelines fine range (or its failure to calculate the Guidelines fine range) "in most instances will suffice to show an effect on the defendant's substantial rights." *Molina-Martinez*, 578 U.S. at 201. We opt not to decide this question now. Among other reasons, *Molina-Martinez* highlighted the empirical evidence showing that district courts adjust their length of *prison sentences* based on the specific Guidelines range. *Id.* at 199–200. But the parties here have presented no such evidence showing how much the advisory fines range serves as an "lodestar" for a district court's chosen *fine*. *Id.* at 200. And given the wide ranges that the Guidelines propose for fines when the statutory maximum exceeds the maximums listed in § 5E1.2(c)(3), it is not obvious that the advisory fine range has the same anchoring effect. Perhaps the court must rely more heavily on other factors—such as a defendant's ability to pay—when choosing the appropriate fine. *Cf.* U.S.S.G. § 5E1.2 cmt. n.3.

Regardless, even assuming that *Molina-Martinez* applies, Tobias has not shown a harmful error when we transplant its test to the fine context. Under *Molina-Martinez*, if the record demonstrates "that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range," then "a reasonable probability of prejudice does not exist." *See* 578 U.S. at 200–01. This is consistent with our review of fines before *Molina-Martinez*. *See Turner*, 536 F. App'x at 619–20 (upholding imposition of an above-Guidelines fine on plain-error review where the sentencing court did not expressly acknowledge the Guidelines fine range but "provided a sufficient explanation of its reasoning"); *Tosca*, 18 F.3d at 1355 (upholding fine where the defendant did not object to the fine at sentencing and where it could be "fairly inferred" from the record that the district court considered the defendant's "ability to pay and the other factors required by law").

The record here supports that the court believed the fine it imposed was appropriate considering the relevant factors, despite its failure to calculate the Guidelines range. To begin with, unlike in the typical case involving a Guidelines range for a prison sentence, the Guidelines range here could have had little anchoring effect because of the large gap between the floor and the ceiling: from $20,000 to $30,000 at a minimum to $8 million at a maximum. These

"circumstances" suggest that the court necessarily would have had to rely more heavily on other factors to choose a specific number. *Molina-Martinez*, 578 U.S. at 201.

Next, the sentencing transcript shows that it did just that. The court addressed the factors set forth in U.S.S.G. § 5E1.2(d), including Tobias's ability to pay a fine and the burden a fine would place on him and his dependents. Regarding his ability to pay, it found that he has assets worth at least $1,126,500—including a million-dollar home, three classic cars, and a Rolex—and a net worth of $214,500 after accounting for debts. *United States v. Woods*, 367 F. App'x 607, 613 (6th Cir. 2010) (upholding fine where "the district court made no findings on the record regarding [the defendant's] ability to pay, other than the general statement in the Judgment that it had 'assessed the defendant's ability to pay'"). Tobias's counsel agreed that those assets could be liquidated to pay a fine. Tobias also had income from his almost twenty-year drug operation and when he spoke on his own behalf, he told the court that he owned property in Cleveland, Ohio, which was not disclosed in the presentence report. The presentence report concluded that Tobias was unable to pay a fine, but the district court was not bound by that recommendation. *United States v. Hopper*, 941 F.2d 419, 423 (6th Cir. 1991).

Regarding the burden on Tobias and his dependents, his counsel pointed out that Tobias co-owned the million-dollar home with his wife, and the court acknowledged as much in its § 3553(a) analysis. It also acknowledged that Tobias has an adult daughter. This reflects that the district court understood Tobias's personal circumstances, including any burden the fine would place on his wife and daughter. *See United States v. Zakharia*, 418 F. App'x 414, 424 (6th Cir. 2011) (finding that, although the district court did not make "express findings regarding [the defendant's] ability to pay, the record reflect[ed] that the district court was familiar with [his] personal circumstances").

Moreover, we can "fairly infer[]" from the record that the court considered the other factors it was required to under 18 U.S.C. § 3572 and 18 U.S.C. § 3553(a) before imposing the fine. *Tosca*, 18 F.3d at 1355. Though it did not acknowledge the Guidelines fine range, the court thoroughly discussed the nature and circumstances of the offense, Tobias's history and characteristics, the necessity of the lengthy sentence it imposed, and sentences imposed on similarly situated defendants. Accordingly, the record supports that the court believed the fine to

be appropriate "irrespective of the Guidelines range," and Tobias offers no further evidence that his substantial rights were affected. *Molina-Martinez*, 578 U.S. at 200.

Because Tobias cannot demonstrate that the district court's error in imposing his prison sentence or fine affected his substantial rights, we need not consider whether the district court's error affected the fairness, integrity, or public reputation of the judicial proceedings.

**III.**

For the foregoing reasons, we **AFFIRM** Tobias's sentence.