RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0059p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

> No. 24-5953

*v.*

RIHANNA BUDDI,

> *Defendant-Appellant.*

Appeal from the United States District Court for the Eastern District of Tennessee at Greeneville.
No. 2:24-cr-00018-1—Clifton Leland Corker, District Judge.

Argued:  December 11, 2025

Decided and Filed:  March 2, 2026

Before:  STRANCH, BUSH, and READLER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Conrad Benjamin Kahn, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.  **ON BRIEF:** Conrad Benjamin Kahn, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge.  Rihanna Buddi pleaded guilty to failure to register as a sex offender in violation of the Sex Offender Registration and Notification Act (SORNA).

In advance of sentencing, and over Buddi's objection, the district court classified her as a Tier II sex offender under SORNA. She was sentenced to 24 months of imprisonment, followed by twenty years of supervised release, which was fifteen years over the applicable advisory Guidelines range of five years flat. Because we find that Buddi is a Tier I offender under SORNA and that the district court erred procedurally in imposing her twenty-year term of supervised release, we **REVERSE** the district court's ruling on Buddi's objection regarding her SORNA classification, **VACATE** her supervised release sentence, and **REMAND** for resentencing.

## I. BACKGROUND

The facts relating to the underlying conduct in this case are undisputed. In 2017, Buddi was convicted under Florida state law of lewd and lascivious battery and transmission of harmful materials to a minor. In December 2023, she relocated from Florida to Bulls Gap, Tennessee, and, as she stipulated, "knowingly failed to register as a sex offender in Tennessee and knowingly failed to properly notify Florida of her move to Tennessee in accordance with SORNA." R. 12, Factual Basis, PageID 24–25. Buddi pleaded guilty to failure to register as a sex offender in violation of 18 U.S.C. § 2250(a).

The PSR classified Buddi as a Tier II sex offender based on her conviction for lewd and lascivious battery and, accordingly, calculated her base offense level as 14; this led to a Guidelines range of 21–27 months of imprisonment. The PSR also calculated the Guidelines range for Buddi's supervised release term as a flat five years. Buddi filed an objection to the SORNA classification, contending in relevant part that Florida lewd and lascivious battery does not have a comparable mens rea requirement to 18 U.S.C. § 2242(b), meaning that she should be treated as a Tier I sex offender with a resulting base offense level of 12. In a Memorandum Opinion and Order issued on the day of Buddi's sentencing hearing, the district court overruled her objection. The district court ultimately sentenced Buddi to 24 months of imprisonment, followed by twenty years of supervised release.

## II.  ANALYSIS

Buddi contends the district court erred in sentencing her as a Tier II sex offender and, separately, that it erred procedurally in imposing the twenty-year term of supervised release.

We pause to note that, while this appeal was pending, Buddi completed her sentence of imprisonment and has now begun her sentence of supervised release.  When a defendant is released from prison, that release does not moot an appeal related to her custodial sentence if the district court would have discretion to reduce her sentence of supervised release on remand.  *See United States v. Solano-Rosales*, 781 F.3d 345, 355 (6th Cir. 2015); *United States v. Genschow*, 645 F.3d 803, 813 (6th Cir. 2011); *United States v. Maken*, 510 F.3d 654, 656 n.3 (6th Cir. 2007).  Thus, because Buddi's appeal of the district court's ruling on her SORNA tier classification "potentially implicates the length of [her] supervised release term," *Maken*, 510 F.3d at 656 n.3 (citation modified), her appeal of the SORNA issue is not moot.

### A.  SORNA Classification

SORNA imposes registration requirements on convicted sex offenders.  *See* 34 U.S.C. § 20913(a).  Failure to register, or update one's registration, under SORNA is a crime punishable by up to ten years of imprisonment.  *See* 18 U.S.C. § 2250(a).  SORNA also provides a three-tier system for classifying sex offenses, in which offenses generally progress in severity from Tier I to Tier III.  *See* 34 U.S.C. § 20911(2)–(4).  When a person is convicted for failing to register under SORNA in violation of § 2250(a), the applicable Sentencing Guidelines range for a violation of § 2250(a) varies based on the defendant's "tier" classification.

Under the tier classification system, offenders who do not qualify as Tier II or III default to Tier I.  *See* 34 U.S.C. § 20911(2).  To trigger Tier II or III status, an offender's qualifying offense must be punishable by more than one year of imprisonment.  *See* § 20911(3)–(4).  SORNA defines Tiers II and III primarily by reference to specific federal sex crimes named and cited in the statute: if the crime of which an offender is convicted "is comparable to or more severe than" a Tier II comparator, the offender is a Tier II sex offender under SORNA; if the crime "is comparable to or more severe than" a Tier III comparator, the offender is Tier III.  *Id.* If a qualifying offense is not "comparable to or more severe than" those offenses listed for Tier II

or III, it may still qualify for heightened tier status if it involves certain aggravating factors—for instance, an offender is Tier II if their qualifying offense involves "(i) use of a minor in a sexual performance; (ii) solicitation of a minor to practice prostitution; or (iii) production or distribution of child pornography." § 20911(3)(B). Finally, if a Tier I or II offender commits another sex crime punishable by more than one year of imprisonment, that elevates their status to the next tier. *See* § 20911(3)(C), (4)(C).

In *United States v. Barcus*, we adopted the "categorical approach" to evaluating when state-law sex crimes trigger heightened tier status under SORNA. *See* 892 F.3d 228, 231–32 (6th Cir. 2018) (citing *United States v. White*, 782 F.3d 1118, 1130–35 (10th Cir. 2015); *United States v. Berry*, 814 F.3d 192, 196 (4th Cir. 2016); *United States v. Morales*, 801 F.3d 1, 6 (1st Cir. 2015)) ("To answer whether Tennessee aggravated sexual battery is a Tier III sex offense, we join other circuits in applying the categorical approach."). Under the categorical approach, a court must compare "what the state law offense requires—not what an individual defendant did—to" the relevant federal offense listed for Tier II or III in SORNA. *Barcus*, 892 F.3d at 232.

At issue here is whether the district court erred by treating Buddi as a Tier II sex offender based on her conviction for lewd and lascivious battery under Florida state law, rather than as a Tier I sex offender, when it sentenced her for failing to update her sex offender registration. Under the categorical approach, this issue turns on whether Florida lewd and lascivious battery is "comparable to or more severe than" the relevant Tier II-qualifying crime, which the parties agree is "coercion and enticement" under 18 U.S.C. § 2422(b). The district court's legal conclusions regarding the relevant statutes and Buddi's SORNA status are subject to de novo review[1]; its imposition of Buddi's sentence, which here involved Guidelines calculations based on those legal conclusions, is subject to review for procedural and substantive reasonableness. *See United States v. Xu*, 114 F.4th 829, 844–45 (6th Cir. 2024).

---

[1]The Government contends plain error applies instead of de novo review because Buddi failed to make precisely the same argument in her objection to the PSR that she now makes on appeal. Yet "[a]s long as a claim or issue was raised before the district court, a party may formulate any argument they like in support of that claim on appeal." *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 541 (6th Cir. 2024) (citation modified). Buddi filed a written objection to the PSR's classification of her as a Tier II offender on the ground that, under the categorical approach, § 2422(b) is narrower than Florida lewd and lascivious battery because it contains a higher mens rea requirement; she raises the same issue and advances essentially the same argument on appeal, with added rigor and precision. Thus, de novo review applies.

1.  The Statutes at Issue

Under the categorical approach, we compare the relevant crimes—Florida lewd and lascivious battery and federal coercion and enticement—according to their statutory definitions; the circumstances of Buddi's individual offense conduct are irrelevant.  *See Barcus*, 892 F.3d at 232.  If "the elements of [the state offense] are the same . . . or are defined more narrowly" than those of the federal offense, *id.*, the state offense is considered "comparable to or more severe than" the federal offense under SORNA, § 20911(3)–(4), and thus qualifies for heightened tier status.  On the other hand, if the elements of the state offense "sweep more broadly than" those of the federal offense, such that a person could be guilty of the state offense but not the federal offense, a conviction for the state offense does not trigger heightened tier status under SORNA. *Barcus*, 892 F.3d at 232 (citation modified).

Florida law defines the offense of lewd and lascivious battery as "[e]ngaging in sexual activity with a person 12 years of age or older but less than 16 years of age" or "[e]ncouraging, forcing, or enticing any person less than 16 years of age to engage in sadomasochistic abuse, sexual bestiality, prostitution, or any other act involving sexual activity."  Fla. Stat. § 800.04(4)(a).  Some courts have described this offense as a strict liability crime, akin to statutory rape.  *See United States v. Harris*, 608 F.3d 1222, 1232–33 (11th Cir. 2010); *Leger v. U.S. Att'y Gen.*, 101 F.4th 1295, 1300–01 (11th Cir. 2024); *State v. Sorakrai*, 543 So. 2d 294, 295 (Fla. Dist. Ct. App. 1989).  It has also been described as a general intent crime, in the sense that the perpetrator must have intended to engage in the prohibited sexual conduct.  *See Straitwell v. State*, 834 So. 2d 918, 920 (Fla. Dist. Ct. App. 2003).  There is no dispute, however, that a person need not have known the minor's age to be guilty of Florida lewd and lascivious battery, as a neighboring provision of Section 800.04 provides that that "[t]he perpetrator's ignorance of the victim's age, the victim's misrepresentation of his or her age, or the perpetrator's bona fide belief of the victim's age cannot be raised as a defense in a prosecution under this section." Fla. Stat. § 800.04(3).

The federal offense of coercion and enticement is defined as follows:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United

States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b). This statute has a clear mens rea term, "knowingly," but the parties disagree on the scope of its application. Buddi contends "knowingly" applies to the element of the minor's age ("any individual who has not yet reached the age of 18 years"), meaning that an individual must know that the object of their "persua[sion], induce[ment], entice[ment], or coerc[ion]" is a minor to violate § 2422(b). The Government disagrees, arguing that § 2422(b) does not require knowledge of the victim's minor status.

## 2. Whether § 2422(b) Requires Knowledge of the Victim's Age

The statute begins with a jurisdictional hook, "[w]hoever, using the mail or any facility or means of interstate or foreign commerce." 18 U.S.C. § 2422(b). It then provides a series of crucial components, in this order: (1) an adverb and mens rea term, "knowingly"; (2) a series of transitive verbs that describe the offender's affirmative conduct, "persuades, induces, entices, or coerces"; (3) a direct object of that conduct, "any individual who has not attained the age of 18 years"; and (4) an infinitive clause functioning as an object complement, "to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense." *Id.* The parties disagree on how many subsequent components "knowingly" reaches. The Government contends it reaches only the verbs (component 2 above), while Buddi argues it "modifies the entire action" (components 2 through 4). The parties do not dispute the meanings of the remaining portions of the statute, which provide the attempt offense ("or attempts to do so") and the punishment ("shall be fined under this title and imprisoned not less than 10 years or for life"). § 2422(b).

The plain text supports Buddi's interpretation. "In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009). For instance, "[i]f we say that someone knowingly ate a sandwich with cheese,

we normally assume that the person knew both that he was eating a sandwich and that it contained cheese." *Id.* at 651. This observation supports the interpretation that "knowingly" in § 2422(b) not only modifies the transitive verbs but "tells the listener how the subject [the offender] performed the entire action." *Id.* at 650. It is difficult to understand how "knowingly" could modify a transitive verb like "persuades, induces, entices, or coerces" *without* also modifying the grammatical object, an "individual who has not attained the age of 18 years." § 2422(b). How could a person knowingly entice without knowing the object of her enticement or, indeed, what she is enticing that person to do? In *Flores-Figueroa*, the Supreme Court held that a statute defining aggravated identity theft as "knowingly transfer[ring], possess[ing], or us[ing], without lawful authority, a means of identification of another person" required the offender to know the identification "in fact" belonged to another person. 556 U.S. at 647 (emphasis omitted) (quoting 18 U.S.C. § 1028A(a)(1)).

*Flores-Figueroa* explained that this result is consistent not only with ordinary use but with courts' construction of similar statues: "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." 556 U.S. at 652 (citing *Liparota v. United States*, 471 U.S. 419 (1985); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 79 (1994) (Stevens, J., concurring)). In *Liparota*, the Court construed a statute criminalizing food stamp fraud, "[w]hoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [law]," as requiring knowledge that the manner was "not authorized by [law]." 471 U.S. at 420, 433 (quoting 7 U.S.C. § 2024(b)(1)). *X-Citement Video* held the adverb "knowingly" reached the element of a victim's minor status when the statute criminalized "[a]ny person who— (1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if—(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 513 U.S. at 68, 72 (quoting 18 U.S.C. § 2252). The rule *Flores-Figueroa* articulates in reference to these examples—that "knowingly" should "ordinarily" be construed as "applying that word to each element"—is a broad interpretive principle. 556 U.S. at 652. It is not limited, for instance, to the relationship between a transitive verb and its direct object, nor even to a particular subsection of a statute, as *Flores-Figueroa* explained that *X-Citement Video* held that "knowingly" reached "the use of a minor"

even though it "was not the direct object of the verbs modified by 'knowingly'" and "it appeared in a different subsection." 556 U.S. at 652–63 (citing *X-Citement Video*, 513 U.S. at 68–69). These precedents support reading § 2422(b) as requiring knowledge of the minor's age.

Following *X-Citement Video*, a pair of decisions from our sister circuits adopted this same interpretation. *See United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004); *United States v. Coté*, 504 F.3d 682, 686 (7th Cir. 2007). As the Ninth Circuit explained in *Meek*, "[f]ollowing our canons of statutory interpretation, it is apparent that the term 'knowingly' refers both to the verbs—'persuades, induces, entices, or coerces'—as well as to the object—'a person who has not achieved the age of 18 years.'" 366 F.3d at 718. *Meek* and *Coté* concerned convictions for the attempt part of § 2422(b) ("or attempts to do so"), both following sting operations in which law enforcement agents posed as minors in online communications with Meek and Coté. *See Meek*, 366 F.3d at 709–11; *Coté*, 504 F.3d at 683–84. In this context, the knowledge mens rea applied to the minor's age in that Meek and Coté committed the attempt offense when they coerced or enticed a person whom they *believed* to be a minor. *See Meek*, 366 F.3d at 722; *Coté*, 504 F.3d at 688.[2] *Coté* also reaches beyond the attempt context because, in addition to challenging his conviction for the attempt offense, Coté brought a facial challenge to the statute, "contend[ing] that Section 2422(b) is unconstitutional on its face because the statute does not contain a scienter requirement with respect to the age of the victim." 504 F.3d at 684. The Seventh Circuit, observing "that the approach of our colleagues in the Ninth Circuit in *Meek* is compatible with the approach of the Supreme Court in *X-Citement Video*," held "that Section 2422(b) is not unconstitutional on its face and that, in order to ensure the requisite criminal intent, the statute should instead be interpreted to require proof of the defendant's knowledge of the age of the victim." *Id.* at 686.

The Government objects that a neighboring statute criminalizing the sex trafficking of children, 18 U.S.C. § 2423(a), has been interpreted consistently to *not* require knowledge of a minor's age. That statute criminalizes "knowingly transport[ing] an individual who has not

---

[2] In another appeal of a § 2422(b) attempt conviction, *United States v. Hart*, we stated that, "[t]o convict Hart under 18 U.S.C. § 2422(b), the jury had to unanimously agree . . . that Hart believed [the victim] was less than 18." 635 F.3d 850, 855 (6th Cir. 2011). Unlike in *Meek* and *Coté*, though, Hart's appeal did not challenge the scope of the knowledge mens rea. *See id.* at 854.

attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense," *id.*, and courts of appeals, including ours, have uniformly held it does not require knowledge of a victim's minor status. *See United States v. Daniels*, 653 F.3d 399, 410 (6th Cir. 2011); *United States v. Cox*, 577 F.3d 833, 838 (7th Cir. 2009); *United States v. Jones*, 471 F.3d 535, 539 (4th Cir. 2006); *United States v. Griffith*, 284 F.3d 338, 351 (2d Cir. 2002); *United States v. Taylor*, 239 F.3d 994, 997 (9th Cir. 2001); *United States v. Tavares*, 705 F.3d 4, 20 (1st Cir. 2013); *United States v. Tyson*, 947 F.3d 139, 145 (3d Cir. 2020); *United States v. Moreira-Bravo*, 56 F.4th 568, 570 (8th Cir. 2022); *United States v. Lacy*, 904 F.3d 889, 898 (10th Cir. 2018); *United States v. Morgan*, 45 F.4th 192, 205 (D.C. Cir. 2022).

Yet while there is widespread consensus that the child sex trafficking statute, § 2423(a), does not require knowledge of the victim's minor status, few circuits have weighed in on whether, or if so how, this construction of § 2423(a) should inform coercion and enticement under § 2422(b). When the Ninth Circuit decided *Meek*, it made no mention of § 2423(a) or its prior holding in *Taylor*, 239 F.3d at 997, that § 2423(a) does not require knowledge of the victim's age. *See generally* 366 F.3d 705. When the Seventh Circuit reached the consensus interpretation of § 2423(a) in *Cox*, after it had already held in *Coté* that § 2422(b) does require knowledge of the victim's age, it made no mention of *Coté* or § 2422(b). *See generally* 504 F.3d 682. But two other circuits, the Eleventh Circuit and the Fourth Circuit, have reached the opposite interpretation of § 2422(b), holding that coercion and enticement does not require knowledge of the victim's age—and in doing so, each relied heavily on the comparison to the child sex trafficking statute, § 2423(a). *See United States v. Daniels*, 685 F.3d 1237, 1248–49 (11th Cir. 2012) (per curiam); *United States v. Banker*, 876 F.3d 530, 537–38 (4th Cir. 2017). As the Fourth Circuit put it in *Banker*,

> These are adjacent statutes, both part of the amended Mann Act, and use the same syntax prohibiting individuals from 'knowingly [engaging in proscribed behavior toward] an[] individual who has attained the age of 18 years.' Thus, absent an indication that we should do otherwise, the Court should interpret these states in pari materia, that is, in a consistent manner.

876 F.3d 537–38 (alterations in original) (internal citations omitted). The Government's argument here relies on the same reasoning.

There are, however, meaningful distinctions between § 2422(b) and § 2423(a). First, recall the structure of the coercion and enticement offense, § 2422(b): it begins with a jurisdictional hook, then names a single mens rea, "knowingly," and then provides the key elements of the criminal conduct at hand. This structure makes it possible to read § 2422(b) in the way *Flores-Figueroa* suggests, with "a phrase . . . that introduces the elements of a crime with the word 'knowingly' as applying that word to each element" that follows it. 556 U.S. at 652. Not so with § 2423(a), because that statute incorporates two distinct mental states. Subsequent to its use of "knowingly," § 2423(a) pauses its recital of the elements of the offense to introduce a second mens rea—intent—that applies to the result of the conduct: "with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." Unlike § 2422(b), then, the text of § 2423(a) is not consistent with the statutory pattern *Flores-Figueroa* contemplates. *See* 556 U.S. at 650–52.

Another crucial factor distinguishing the coercion and enticement offense at issue here from child sex trafficking under § 2423(a) is that the victim's age is often the only thing that makes § 2422(b) conduct criminal. "[W]ith few exceptions, the inducement of a person over the age of 17 into sexual activity is generally not illegal," *Meeks*, 366 F.3d at 721–22; the victim's age is often the only thing separating conduct punishable under § 2422(b) from, say, messages exchanged on dating apps between consenting adults. In § 2423(a), however, the minor's age is not what makes the conduct criminal—it is what triggers an *increased* criminal penalty as compared to another provision of the Mann Act, 18 U.S.C. § 2421, which criminalizes the sex trafficking of adults. When we held that § 2423(a) does not require knowledge of the victim's age, we emphasized this relationship to § 2421: "age in § 2423(a) is not a factor that distinguishes criminal behavior from innocent conduct, but rather serves to justify a harsher penalty when a victim is underage." *Daniels*, 653 F.3d at 410 (citation modified). In this respect, § 2422(b) has more in common with the statute at issue in *X-Citement Video*, § 2252, where "the age of the performers [was] the crucial element separating legal innocence from

wrongful conduct." 513 U.S. at 73; *see also Lacy*, 904 F.3d at 897 (distinguishing *X-Citement Video* from § 2423(a) on the same basis).

That the minor's age is often the only fact to render § 2422(b) conduct illegal also sounds in the presumption in favor of scienter, which presumes a scienter requirement "should apply to each of the statutory elements that criminalize otherwise innocent conduct." *X-Citement Video*, 513 U.S. at 71–72 (citing *Morissette v. United States*, 342 U.S. 246, 255, 260 (1952); *Staples v. United States*, 511 U.S. 600, 619 (1994)).

The Supreme Court recently invoked this rule of construction in *Rehaif v. United States*, a 2019 decision that postdates the Eleventh Circuit's decision in *Daniels* and the Fourth Circuit's in *Banker*. *See* 588 U.S. 225, 228–29 (2019). The defendant in *Rehaif* was convicted under two related statutes: 18 U.S.C. § 922(g)(5)(A), which prohibits "an alien [who] is illegally or unlawfully in the United States" from possessing a firearm; and § 924(a)(2), which provided at the time that anyone who "knowingly violates" the provisions of § 922(g) faced a fine or up to ten years of imprisonment.[3] *See id.* at 227–28. *Rehaif* held "that the word 'knowingly' applies both to the defendant's conduct and the defendant's status," such that the Government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 227. Under the relevant statutes, the Court explained, "the defendant's status is the 'crucial element' separating innocent from wrongful conduct," which "assures us that the presumption in favor of scienter applies." *Id.* at 233 (quoting *X-Citement Video*, 513 U.S. at 73). *Rehaif* also distinguished cases where the presumption applies from those "involving statutory provisions that form part of a 'regulatory' or 'public welfare' program and carry only minor penalties," noting that the provisions under which Rehaif was convicted "are not part of a regulatory or public welfare program" and "carry a potential penalty of 10 years in prison." *Id.* at 232. This context suggests that § 2422(b), which criminalizes conduct based on the minor's status and carries a *minimum* term of ten years of imprisonment, requires knowledge of that "'crucial element' separating innocent from wrongful conduct." *Id.* at 233 (quoting *X-Citement Video*, 513 U.S. at 73).

---

[3]The statute now provides a maximum sentence of fifteen years of imprisonment. *See* 18 U.S.C. § 924(a)(8).

The Government offers a few additional arguments against this conclusion, all of which are unconvincing.  First, it contends the victim's age is not the only thing that makes otherwise innocent conduct illegal because § 2422(b) criminalizes coercing or enticing the victim to engage in prostitution or "*any sexual activity for which any person can be charged with a criminal offense.*"  § 2422(b) (emphasis added).  This argument ignores that, in many cases, the sexual activity in question would be something "for which any person can be charged with a criminal offense" simply because sex with a minor is statutory rape.  As we explained in *United States v. Hart*, Congress "made a clear choice in 18 U.S.C. § 2422(b) to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves," such that the "underlying sexual activities" associated with that persuasion must be illegal as defined by state law.  635 F.3d at 854 (citation modified).  So as long as there is a relevant statutory rape offense in a state's law, the victim's minor status is all that is needed to make the would-be sexual activity criminal.

Second, the Government suggests that a common-law tradition of "strict-liability age elements in child sex crimes," *Moreira-Bravo*, 56 F.4th at 573, counsels that knowledge does not apply to the age element of § 2422(b).  It points to precedents excepting "sex offenses, such as rape," from the presumption of scienter, *see Morissette*, 342 U.S. at 251 n.8, because "if anyone does this wrong act he does it at the risk of the girl turning out to be [underaged]," *R v. Prince*, (1875) 13 Cox C.C. 138 (AC) at 142 (Eng.).  But as we have already explained, the minor's age is often the only thing that makes § 2422(b) conduct illegal, so it cannot be described as already wrongful conduct that becomes *more* blameworthy based on age.  The Government further argues that the purpose of § 2422(b) suggests strict liability as to the victim's age, because Congress enacted the current version of the statute "to protect children from sexual abuse and exploitation," Pub. L. No. 105-314, 112 Stat. 2974, 2974 (1998).  While such language is a clear expression of Congress's purpose, that purpose does not compel the Government's interpretation of the statutory text over Buddi's, especially when either interpretation would serve to protect children and other issues of construction, such as the presumption in favor of scienter, are at play.  Both of these arguments (regarding common-law approaches to rape statutes and Congress's purpose) also fail to account for the Supreme Court's holding in *X-Citement Video*,

which applied "knowingly" to the element of minor status in a statute that criminalized the sexual exploitation of children.  *See* 513 U.S. at 78.

The Government argues in the alternative that, even assuming § 2422(b) requires knowledge of a victim's age, Florida lewd and lascivious battery is still comparable under SORNA.  The Government urges that "[c]oercing or enticing a person who is actually under 16 years of age to commit illicit sexual activity is not any different than coercing or enticing a person whom one believes to be under 18 to commit such activity.  In both cases, the perpetrator is targeting an obviously young individual."  Appellee's Br. 25–26.  This argument is unpersuasive.  Child sex offenses do not criminalize conduct toward "obviously young" people—they criminalize conduct directed toward minors, sometimes (as with Florida lewd and lascivious battery) minors of specific ages.  This argument is also plainly inconsistent with the Florida legislature's express contemplation of "ignorance of the victim's age," "misrepresentation," and "bona fide [mistaken] belief" as possibilities—and its provision that a person may be guilty even if one of those circumstances applies.  *See* Fla. Stat. § 800.04(3).  It is a fundamental principle of criminal law that distinctions among culpable mental states are meaningful; this is no less true in the highly sensitive and difficult area of criminal law this case presents.

We hold that § 2422(b) requires knowledge of a victim's minor status and, as a result, that Florida lewd and lascivious battery is not a comparable offense to § 2422(b) under the categorical approach.  *See Barcus*, 892 F.3d at 232.  Buddi is therefore a Tier I sex offender under SORNA.

## B.  Supervised Release Sentence

"Procedural reasonableness requires the district court to properly calculate the Guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Morris*, 71 F.4th 475, 481 (6th Cir. 2023) (citation modified).  Buddi argues her twenty-year supervised release

sentence was procedurally unreasonable because the district court miscalculated, or otherwise misunderstood, the applicable Guidelines range.

Sentencing courts have an affirmative responsibility to understand applicable Sentencing Guidelines ranges. As the Supreme Court has put it, "[f]ederal courts understand that they '*must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.'" *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013)). The Guidelines provide the necessary tools to "anchor both the district court's discretion and the appellate review process." *Peugh*, 569 U.S. at 549. "Even if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*.'" *Id.* at 542 (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011)). As a result, when a district court begins with an incorrect Guidelines calculation, that error is often enough to taint the rest of the sentencing. *See id.*; *Molina-Martinez*, 578 U.S. at 199 ("The Guidelines' central role in sentencing means that an error related to the Guidelines can be particularly serious.").

Here, the parties agree that the advisory Guidelines range for Buddi's supervised release sentence was a flat five years. They also agree that the PSR correctly calculated the Guidelines range as a flat five years. But Buddi was sentenced to 20 years—four times the applicable Guidelines range. She contends this sentence was procedurally unreasonable because the district court referred at sentencing to the statutory range, which was five years to life, and treated that as if it were the Guidelines range. Buddi points first to the beginning of the sentencing hearing, when the district court recounted her offense level and criminal history calculations, then stated, "that produces an advisory [G]uideline range of 21 to 27 months of imprisonment, *five years to life on supervised release*, and a fine range between $5,500 and $55,000 and a special assessment of $100." R. 51, Sentencing Tr., PageID 352 (emphasis added).

There is some ambiguity as to what standard of review should apply to this issue because Buddi may not have properly preserved an objection regarding the district court's calculation of the Guidelines range for her supervised release term. After the district court recited the ranges above, it asked whether "there [are] any objections to those findings," and defense counsel

replied, "no, your honor, other than the previous ones we've lodged about the tiers" (referring to Buddi's SORNA classification). *Id.* Once the district court announced the twenty-year supervised release sentence and again invited counsel to state any objections, however, defense counsel stated, "we would object to the 20 years of supervised release as substantially and procedurally unreasonable." *Id.* at PageID 374. If Buddi forfeited her objection, plain error review applies; if she preserved it, abuse of discretion applies. *See United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022).

Regardless of the sufficiency of counsel's objection, though, the standard of review does not drive the outcome here, because sentencing a defendant under incorrect Guidelines often warrants relief under either plain error or abuse of discretion review. To prevail on plain error review, a defendant "must show (1) an error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Sears*, 32 F.4th 569, 573 (6th Cir. 2022) (citation modified). As the Supreme Court explained in *Molina-Martinez*, "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." 578 U.S. at 198. And in *Rosales-Mireles v. United States*, the Court held that a plain Guidelines error "particularly undermines the fairness, integrity, or public reputation of judicial proceedings . . . because of the role the district court plays in calculating the range and the relative ease of correcting the error." 585 U.S. 129, 140 (2018). We have therefore instructed, citing *Molina-Martinez* and *Rosales-Mireles*, that the third and fourth prongs of plain error review "typically favor correcting Guidelines errors." *United States v. Montgomery*, 998 F.3d 693, 700 (6th Cir. 2021).

The district court's opening summary of the applicable Guidelines ranges provides clear, affirmative evidence of a misunderstanding regarding the applicable Guidelines range for Buddi's supervised release term. Here is that summary again, with a bit more context:

> [T]his is what I'm going to calculate her advisory [G]uideline range to be. She is total offense level [] 12. She has 8 criminal history points, which puts her in category IV. And that produces an advisory [G]uideline range of 21 to 27 months

of imprisonment, five years to life on supervised release, and a fine range between $5,500 and $55,000 and a special assessment of $100.

R. 51, PageID 352. Everything about this excerpt suggests the district court understood "five years to life" to be the Guidelines range, not the statutory range. First, the court introduced the topic, "I'm going to calculate her advisory [G]uideline range." Then, it reviewed Buddi's offense level and criminal history scores—measures that pertain to a defendant's individual Guideline ranges, not generally applicable statutory ranges. Finally, "five years to life on supervised release" is sandwiched between two other ranges that the district court certainly would have understood to be Guidelines ranges: "21 to 27 months of imprisonment" and "a fine range between $5,500 and $55,000." All these signs suggest that the Guidelines range was misstated as five years to life. The record reflects that, for the remainder of the sentencing, the district court never corrected this error or even revisited the topic of the Guidelines range for Buddi's supervised release sentence.

A fuller view of Buddi's sentencing, including the term of imprisonment, further supports her position on this issue. When the district court imposed Buddi's sentence of imprisonment, it engaged in an extended, substantive discussion of the 21-to-27-month Guidelines range and its procedural implications and, ultimately, explained its reasoning that the most appropriate outcome based on the sentencing factors was to "split the difference" with an exact middle-of-the-Guidelines sentence of 24 months. R. 51, PageID 359–67. In light of the court's well-reasoned and thorough explanation for imposing this middle-of-the-Guidelines sentence of imprisonment, it defies credulity to think that the court knowingly imposed a supervised release sentence fifteen years over the Guidelines range with no acknowledgement of or explanation for that decision.

The Government offers a few arguments in response, all of which are unavailing. It characterizes the district court's recitation of "five years to life on supervised release" as "one comment from the sentencing hearing [taken] out of context." Appellee's Br. 29. Yet "one comment" in this context can be awfully significant, especially when it suggests a court has neglected to "begin [its] analysis with the [correct] Guidelines." *Molina-Martinez*, 578 U.S. at 198 (citation modified). The Government also urges that the district court formally adopted the

PSR, and its calculations of Buddi's Guidelines ranges were correct. But PSRs contain many details that inform sentencing, and district courts do not produce PSRs. A PSR's correct calculation of the Guidelines cannot be a basis to presume the district court "remain[ed] cognizant of them throughout the sentencing process." *Peugh*, 569 U.S. at 541. Third, the Government notes that the district court did consider a five-year term later in the sentencing when, having pronounced Buddi's sentence of imprisonment, it turned to supervised release, stating, "the term of supervised release is an issue that is very important to the court. And your attorney has indicated that five years is sufficient. In my estimation five years is not sufficient." R. 51, PageID 368. But these comments do not demonstrate a clear understanding that the Guidelines range was five years—they are instead consistent with the district court responding as if defense counsel was advocating a bottom-of-the-Guidelines sentence.

Finally, the Government argues that "even if the court had miscalculated Buddi's supervised-release Guidelines range," "that error did not affect [her] substantial rights" because the district court based the twenty-year term on the § 3553(a) sentencing factors. Appellee's Br. 30. In support of this argument, the Government cites *United States v. Tobias*, where we held that a district court's failure to calculate a Guidelines range "did not affect Tobias's substantial rights because his sentence was not based on the Guidelines range." 101 F.4th 473, 483 (6th Cir. 2024). But the sentence in *Tobias* was based on a mandatory minimum. *Id.* at 479. The district court there sentenced Tobias to a mandatory-minimum sentence of 120 months and omitted a Guidelines calculation altogether. *See id.* On appeal, we concluded that the district court "clearly erred" by failing to calculate a Guidelines range, but we nonetheless affirmed the sentence because the failure to perform a Guidelines calculation could not have affected Tobias's substantial rights (and thus failed to satisfy plain error review) when the mandatory minimum sentence was the lowest sentence possible. *See id.* at 481–83. *Tobias* emphasized that such a sentence "can be affirmed . . . only in . . . limited circumstances." *Id.* at 482. Such circumstances do not apply here.

At bottom, the record shows that the district court operated under a misunderstanding of the applicable Guidelines range for Buddi's supervised release sentence, which ultimately resulted in a sentence that was four times greater than the Guidelines range of five years flat. We

hold that the district court erred procedurally in imposing Buddi's twenty-year term of supervised release. This error warrants vacating and remanding for resentencing, regardless of whether plain error or abuse of discretion applies. *See Molina-Martinez*, 578 U.S. at 198–99; *Rosales-Mireles*, 585 U.S. at 140; *Montgomery*, 998 F.3d at 700.

Buddi also contends that the district court erred procedurally by relying on an impermissible factor—"the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A)—when it imposed her sentence of supervised release. *See* 18 U.S.C. § 3583(c); *Esteras v. United States*, 606 U.S. 185, 188 (2025).[4] We need not decide this issue, however, having already found procedural error in the imposition of Buddi's twenty-year supervised release sentence, and we decline to do so here.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's ruling on Buddi's objection regarding her SORNA classification and **VACATE** her supervised release sentence. This case is **REMANDED** to the district court for further proceedings consistent with this opinion.

---

[4]The Supreme Court recently discussed this constraint in *Esteras*, which offers guidance on how sentencing courts should avoid relying on § 3553(a)(2)(A), notwithstanding that they may consider the "nature and circumstances of the offense," § 3553(a)(1), in other capacities. *See* 606 U.S. at 200.